IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

VICKIE FEGAN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0126

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION ................................. 2

II.  PRINCIPLES OF REVIEW ........................... 2

III. FACTS ......................................... 4
    A.  Fegan's Education and Employment Background ........ 4
    B.  Vocational Expert's Testimony from the Administrative Hearing .... 4
    C.  Fegan's Medical History ........................ 5
        1.  Brief Review of Fegan's Cancer Treatment ........... 5
        2.  Treating, Examining, and Non-Examining Source
           Statements on Fegan's Functional Abilities ........... 6

IV. CONCLUSIONS OF LAW ............................. 9
    A.  ALJ's Disability Determination .................... 9
    B.  Objection Raised By Claimant .................... 11
    C.  Reversal or Remand ........................... 16

V.   CONCLUSION ................................... 16

VI. ORDER ........................................ 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Vickie Fegan on November 18, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Fegan asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Fegan requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the

decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Fegan's Education and Employment Background

Fegan was born in 1956. She is a college graduate. She had two years of college for nursing, and later returned to college and earned a degree in management. Her past jobs include being a licensed practical nurse and bank manager.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is:

> limited to light work, can occasionally climb, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders, ropes, and scaffolds; this person has to avoid concentrated exposure to extreme heat or cold and needs to avoid concentrated exposure to hazardous conditions; this person can reach overhead frequently with the right dominant upper extremity and occasionally with the left upper extremity -- that's just reaching overhead -- this person can perform tasks that can be learned in 30 days or less, involving no more than simple work-related decisions with few workplace changes; should have only brief and superficial interaction with the public and can have occasional interaction with coworkers and supervisors.

(Administrative Record at 70.) The vocational expert testified that under such limitations, Fegan could not perform her past relevant work. The vocational expert testified, however, that Fegan could perform the following jobs: (1) photocopy machine operator (250 positions in Iowa and 29,000 positions in the nation), (2) counter clerk (1,000 positions in

Iowa and 400,000 positions in the nation), and (3) tanning salon attendant (200 positions in Iowa and 11,000 positions in the nation). The ALJ further questioned the vocational expert:

> Q: Okay. Now take that person identified in hypothetical one an add in a limitation to frequent handling and fingering with both upper extremities.
> A: The jobs that I cited would still be available, your honor. . . .
> Q: If the person was unable to attend work one day a week, would that preclude all jobs?
> A: Yes.

(Administrative Record at 71.)

Fegan's attorney aslo questioned the vocational expert:

> Q: If the person will be off-task for at least an hour out of an eight-hour workday due to concentration problems, would that eliminate those jobs?
> A: Yes.
> Q: Now, if the attendance problems were only twice a month, would that eliminate those jobs?
> A: Well, I would say that, you know, even in unskilled work, if you're consistently missing two days a month, I would say the individual might, you know, obtain the job at first but would not keep the job.
> Q: And if a person needs to take unscheduled breaks to lie down, will that be tolerated on the job?
> A: No.

(Administrative Record at 72).

### C. Fegan's Medical History

#### 1. Brief Review of Fegan's Cancer Treatment

On September 16, 2009, Fegan was diagnosed with breast cancer. She underwent a total mastectomy of the left breast on October 16, 2009. Following the mastectomy, Fegan underwent chemotherapy from November 19, 2009 through March 11, 2010. She

also underwent radiation treatment from April 1, 2010 to May 17, 2010. On February 15, 2011, she had reconstructive surgery for her left breast.

### 2. *Treating, Examining, and Non-Examining Source Statements on Fegan's Functional Abilities*

On December 14, 2010, Disability Determination Services ("DDS") referred Fegan to Dr. Barbara J. Lips, Ph.D., for a psychological evaluation. In her notes, Dr. Lips quoted Fegan regarding her health complaints:

> She then stated that her doctor "wrote down that I was not going to be able to work, I know my fibromyalgia was one...I have short-term memory loss...I have panic attacks real bad...and in that information in there you should have...I was gonna come up here and marry Frank and you should find...and they found a tumor and they removed my left breast." She continued in a disorganized manner with additional information regarding getting dizzy and falling at different times and in different places[.] . . . She concluded that she has particular difficulty with her fibromyalgia and neuropathy.

(Administrative Record at 805.) Upon examination, Dr. Lips diagnosed Fegan with adjustment disorder with mixed anxiety and depressed mood, and personality disorder. Dr. Lips concluded that:

> Ms. Fegan appears able to remember and understand instructions, procedures, and locations of at least simple complexity, but unlikely to maintain attention, concentration, and pace in order to carry out such instructions adequately. Her current style of functioning would interfere with being able to interact appropriately with supervisors, coworkers, and the public. She appears unlikely to focus well enough on the demands of her workplace that she could be relied upon to exercise independent good judgment about workplace issues, and she likely would not respond well to changes in the workplace.

(Administrative Record at 808.)

On January 11, 2011, Dr. Jennifer Ryan, Ph.D., reviewed Fegan's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Fegan. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Fegan with adjustment disorder with depression and anxiety and personality disorder. Dr. Ryan determined that Fegan had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Fegan was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Ryan concluded that "[t]he preponderance of the evidence contained in the file supports the assertion that [Fegan] is able to carry out simple to moderately complex instructions and perform work tasks consistent with this ability in environments with limited interpersonal demands."[1]

On January 12, 2011, at the request of DDS, Fegan met with Dr. Robin L. Epp, M.D., for a consultative physical examination. In reviewing Fegan's medical history, Dr. Epp noted her diagnoses of fibromyalgia in May 2009, and cancer and short-term memory loss in September 2009. Fegan described her fibromyalgia symptoms as "pain in the joints and nerves of the hands and feet[.] . . . She rates her pain as 5/10 at best, 10/10 on average and 10/10 at worst."[2] According to Fegan, pain medication decreases her pain to "some degree." Fegan described her short-term memory loss as "trouble

---

[1] Administrative Record at 819.

[2] *Id.* at 835.

remembering, comprehension and needing constant reminders to take her medications. She also has difficulty making major decisions. She has been told by friends that she repeats herself and she has difficulty remembering names."[3] Dr. Epp determined that Fegan has the following functional restrictions: (1) lifting/pushing/pulling 5 pounds occasionally, (2) no carrying, (3) occasional sitting, and (4) rare standing and walking.

On February 2, 2011, Dr. Stephen Elliot, D.O., reviewed Fegan's medical records and provided DDS with a physical RFC assessment for Fegan. Dr. Elliot determined that Fegan could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Elliot also determined that Fegan could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Elliot found that Fegan should avoid concentrated exposure to extreme cold, extreme heat, and hazards, such as machinery and heights. Dr. Elliot found no manipulative, visual, or communicative limitations.

On June 9, 2011, Dr. Chystalla Daly, D.O., reviewed Fegan's medical records and provided DDS with a physical RFC assessment for Fegan. Dr. Daly determined that Fegan could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly also determined that Fegan could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Daly found that Fegan should avoid concentrated exposure to extreme cold, extreme heat, and hazards, such as machinery and heights. Additionally, Dr. Daly found that

---

[3] *Id.* at 836.

Fegan was limited in her ability to reach in all directions. Dr. Daly found no visual or communicative limitations.

On March 15, 2012, Dr. Abha Saxena, M.D., Fegan's treating doctor, filled out a fibromyalgia RFC assessment for Fegan. Dr. Saxena indicated that Fegan's symptoms included: a history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, irritable bowel syndrome, tension headaches, paresthesias, swollen hands, sleep disturbance, chronic fatigue, and inability to walk effectively. Dr. Saxena opined that Fegan could: (1) stand at one time for 15 minutes, (2) sit at one time for 30 minutes, (3) frequently lift 5 pounds, (4) occasionally bend, and (5) never stoop. Dr. Saxena concluded that Fegan was incapable of working due to her fibromyalgia.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that prior to June 4, 2011, Fegan was not disabled.[4] In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

---

[4] The ALJ determined that beginning on June 4, 2011, the date Fegan's age category changed, she became disabled "by direct application of Medical-Vocational Rule 202.06, applied non-mechanically." Administrative Record at 24.

9

impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Fegan had not engaged in substantial gainful activity since June 18, 2009. At the second step, the ALJ concluded from the medical evidence that Fegan had the following severe impairments: history of breast cancer -- malignant neoplasm, fibromyalgia -- by report with minimal tender points, depression, anxiety, and personality disorder. At the third step, the ALJ found that Fegan did not have an impairment or combination of impairments listed in

20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Fegan's RFC as follows:

> [Fegan] has the residual functional capacity to perform light work . . . except: she can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crawl, and crouch; she would need to avoid concentrated exposure to extreme heat, cold, and hazards; she can perform frequent overhead reaching with the right dominant upper extremity and only occasional overhead reaching with the left upper extremity; she is limited to tasks that can be learned in thirty days or less involving no more than simple work related decisions with few work place changes; she can have only brief, superficial contact with the public; and she could have only occasional interaction with coworkers and supervisors.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Fegan could not perform her past relevant work. At the fifth step, the ALJ determined that prior to June 4, 2011, and based on her age, education, previous work experience, and RFC, Fegan could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Fegan was not disabled.

### B. Objection Raised By Claimant

Fegan argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of her functional limitations. Fegan further asserts that when determining her RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations caused by her cancer treatment, fibromyalgia, and mental health difficulties. Fegan also maintains that when determining her disability onset date, the ALJ failed to take into consideration the amount of work she missed between September 2009 and June 2011 due to her cancer treatments, and difficulties with fibromyalgia and mental health problems. Fegan concludes that this matter should be remanded for an award of benefits

from September 16, 2009 to June 3, 2011; or in the alternative, remanded for further development of her RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an

assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In reviewing Fegan's medical history, the ALJ thoroughly addressed the opinions of Fegan's various treating, consultative examining, and consultative non-examining doctors.[5] However, the ALJ offered little discussion of Fegan's extensive treatment for breast cancer. Indeed, the Commissioner, in her brief, appears to concede that from September 2009 to May 2010, Fegan would have missed an extensive amount of work.[6] The Court finds it significant that at the administrative hearing, the vocational expert testified if Fegan missed two days of work per month, she would be precluded from competitive employment.[7] Accordingly, the Court finds that remand is appropriate to fully and fairly develop the record with regard to Fegan's history of cancer treatment, especially as it relates to absenteeism from work.

---

[5] *See* Administrative Record at 15-21 (providing thorough review of Fegan's medical history).

[6] *See* Commissioner's Brief (docket number 13) at 19. Specifically, in her brief, the Commissioner states:
> While [Fegan] had a substantial number of doctor's appointments and some hospitalizations following her September 2009 mastectomy, [her] intensive treatment, consisting of chemotherapy and radiation had ended by May 2010. . . .
>
> There is no evidence that, if [Fegan] had been working during the time period after she stopped radiation therapy in May 2010, that her doctor's appointments would all have required her to miss multiple entire days of work each month, as [she] claims in her brief.

*Id.*

[7] *See* Administrative Record at 72.

Furthermore, the ALJ offered little discussion of the opinions of Dr. Saxena, a treating physician, regarding Fegan's limitations due to fibromyalgia. For example, Dr. Saxena opined that Fegan could: (1) stand at one time for 15 minutes, (2) sit at one time for 30 minutes, (3) frequently lift 5 pounds, (4) occasionally bend, and (5) never stoop. Dr. Saxena also opined that Fegan was incapable of working due to her fibromyalgia. Dr. Saxena's opinions are consistent with the opinions of an examining consultative physician, Dr. Epp, who opined that Fegan's functional restrictions were: (1) lifting/pushing/pulling 5 pounds occasionally, (2) no carrying, (3) occasional sitting, and (4) rare standing and walking. The ALJ generally gave limited weight to both of these opinions because they were not supported by objective evidence in the record and were "apparently" based on Fegan's subjective complaints reported to the doctors. The Court is unpersuaded by the ALJ's reasoning in limiting the weight of these opinions. First, the ALJ points to no objective medical evidence in the record and offers no examples of objective medical evidence from the record to support his limiting of the weight given to the opinions of either physician. Second, the physicians did not rely only on Fegan's subjective complaints, but also treated Fegan and/or examined her in offering their opinions on her physical condition. Therefore, the Court finds that remand is appropriate to allow the ALJ to fully and fairly develop the record with regard to Fegan's limitations stemming from fibromyalgia, including full consideration of the opinions of Dr. Saxena and Dr. Epp. *See Cox*, 495 F.3d at 618.

Finally, the ALJ accords "some" weight to the opinions of Dr. Lips, an examining source. Dr. Lips opined that:

> Ms. Fegan appears able to remember and understand instructions, procedures, and locations of at least simple complexity, but unlikely to maintain attention, concentration, and pace in order to carry out such instructions adequately. Her current style of functioning would interfere with being able to interact appropriately with supervisors, coworkers, and

> the public. She appears unlikely to focus well enough on the demands of her workplace that she could be relied upon to exercise independent good judgment about workplace issues, and she likely would not respond well to changes in the workplace.

(Administrative Record at 808.) Even though the ALJ accords Dr. Lips' opinions "some" weight, he discounts her opinions on Fegan's work limitations in a conclusory fashion by simply stating that Dr. Lips' GAF score is inconsistent with work limitations she found for Fegan. Dr. Lips assessed Fegan's GAF score at 62, indicating mild symptoms. While Dr. Lips' GAF score may be inconsistent with her work limitations, it is unclear from the ALJ's decision if all of Dr. Lips' work limitations are entitled to no weight due to a single GAF score; or if only some of the work limitations are entitled to no weight, but others may be entitled to "some" weight. Thus, because it is unclear to the Court if any of Dr. Lips' work limitations are entitled to weight, the Court is unconvinced that this reason, standing alone, is sufficient to disregard all of Dr. Lips' work limitations for Fegan. Accordingly, on remand, the ALJ should fully and fairly develop the record with regard to Fegan's work limitations based on her mental impairments, including the work limitations provided by Dr. Lips. *See Cox*, 495 F.3d at 618.

In sum, having reviewed the entire record, the Court finds that the ALJ failed to fully and fairly develop the record with regard to Fegan's cancer treatment, fibromyalgia, and mental health difficulties, especially as such issues relate to Fegan's RFC. *See Cox*, 495 F.3d at 618 (providing that an ALJ must fully and fairly develop the record). Therefore, on remand, the ALJ must fully and fairly develop the record with regard to Fegan's history of cancer treatment, limitations due to fibromyalgia, and limitations due to mental health difficulties. The ALJ must also fully address these issues in determining Fegan's RFC. *See Guilliams*, 393 F.3d at 803 (a claimant's RFC assessment must be based on all of the relevant evidence).

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Fegan's history of cancer treatment, limitations due to fibromyalgia, and limitations due to mental health difficulties. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Fegan's history of cancer treatment, limitations due to fibromyalgia, and

limitations due to mental health difficulties, and fully address those issues in determining Fegan's RFC.

### VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 17th day of September, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA